UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BENJY WADE,

    Plaintiff,

v.

J. RUBALCABA, et al.,

    Defendants.

No. 2: 18-cv-2844 KJM KJN P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. On November 20, 2018, the undersigned dismissed plaintiff's first amended complaint with leave to amend. (ECF No. 13.) On December 21, 2018, plaintiff filed a second amended complaint. (ECF No. 16.) On February 15, 2019, plaintiff filed a third amended complaint. (ECF No. 18.) Good cause appearing, the undersigned screens the third amended complaint. Fed. R. Civ. P. 15.

For the reasons stated herein, the undersigned recommends that this action be dismissed.

Background

Plaintiff filed the original complaint on October 3, 2018. (ECF No. 1.) Plaintiff named defendants Nenshmid and Rubacalba as defendants. (Id.) In the original complaint, plaintiff indicated that his administrative remedies were not yet exhausted. (Id. at 2.)

////

1

Before the undersigned could screen the original complaint, plaintiff filed the first amended complaint on November 5, 2018. (ECF No. 10.) Plaintiff again named defendants Nenshmid and Rubacalba as defendants. (Id.) Plaintiff again indicated that administrative remedies were not yet exhausted. (Id. at 2.)

On November 20, 2018, the undersigned dismissed the first amended complaint with leave to amend for failing to state potentially colorable claims for relief. (ECF No. 13.)

On December 21, 2018, plaintiff filed a second amended complaint naming defendants Nenshmid, Rubacalba and Dr. Palmer as defendants. (ECF No. 16.) Plaintiff again indicated that his administrative remedies were not yet exhausted. (Id. at 2.)

Before the undersigned could screen the second amended complaint, plaintiff filed the third amended complaint on February 15, 2019. (ECF No. 18.) The third amended complaint names defendants Nenshmid, Rubacalba and Dr. Palmer as defendants. (Id.) In the third amended complaint, plaintiff indicates that his administrative remedies are now exhausted. (Id. at 3.)

Allegations in Third Amended Complaint

Plaintiff alleges that defendant Rubacalba made false claims and false statements in support of plaintiff's lockdown order. (Id. at 4.) Plaintiff alleges that these false statements were made for the purpose of harming plaintiff and "taking my medication needed to live." (Id.) Plaintiff alleges that defendant Palmer failed to give him his medication for a serious medical need. (Id.) Plaintiff alleges that without his medication, he did not receive "the needed amount of sleep to live." The third amended complaint contains no allegations against defendant Nenshmid.

It appears that all the alleged deprivations occurred at California State Prison-Solano ("Solano").

Defendant Rubacalba

The first amended complaint contained similar claims against defendant Rubacalba. The undersigned dismissed these claims with leave to amend because they were so vague and conclusory that the undersigned could not determine whether plaintiff had stated potentially

2

colorable claims against defendant Rubacalba. (ECF No. 13 at 3.) The undersigned observed that plaintiff did "not describe the alleged false pretenses defendant Rubacalba relied on to justify moving plaintiff to the ASU." (Id. at 3.) Plaintiff also did not "discuss whether defendant Rubacalba knew that the psychiatrist was going to take away his medication following his transfer to ASU." (Id.)

The third amended complaint does not cure the pleading defects contained in the first amended complaint as to the claims against defendant Rubacalba. In the third amended complaint, plaintiff does not describe the allegedly false statements or claims defendant Rubacalba made that led to plaintiff's lockdown. While plaintiff suggests that defendant Rubacalba had him placed on lockdown for the purpose of denying plaintiff his medication, plaintiff alleges no facts supporting this claim.

The grievances attached to the third amended complaint shed some light on plaintiff's claim against defendant Rubacalba. These documents indicate that plaintiff was placed in administrative segregation ("ad seg") on June 11, 2018 by defendant Rubacalba. (Id. at 6.) By the time plaintiff signed his first level grievance on July 4, 2018, plaintiff had been transferred to California State Prison-Corcoran ("Corcoran").[1] (Id. at 18.) In the first level grievance, plaintiff wrote that the things they put down in the lockdown order were "made up." (Id.) Plaintiff wrote that all he did was "ask a C/O to possibly use a regular prison phone to check on my family." (Id.)

The June 11, 2018 ad seg notice signed by defendant Rubacalba, i.e., the "lock up order," is attached to the third amended complaint. (Id. at 13.) This notice states that plaintiff was placed in ad seg because on June 11, 2018, he approached staff and stated that he could no longer remain in the general population. (Id.) The notice states that, "An investigation into your possible enemy/safety concerns amongst the Facility A general population will be conducted." (Id.)

Plaintiff is apparently alleging that defendant Rubacalba's statement that plaintiff told staff he had safety concerns in the general population was not true. In essence, plaintiff argues

---

[1] The undersigned observes that by the time plaintiff filed the original complaint on October 3, 2018, he had returned to Solano. (ECF No. 1.)

that there was insufficient evidence to support defendant Rubacalba's decision to place him in ad seg. See <u>Kelley v. Peters</u>, 747 Fed.Appx. 588, 589 (9th Cir. 2019) (citing <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1287 – 88 (9th Cir. 2003) (explaining that due process claims based on administrative segregation are subject to the "some evidence" standard); <u>Toussaint v. McCarthy</u>, 926 F.2d 800, 803 (9th Cir. 1990) (discussing "indicia of reliability" of evidence).

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. See <u>Ingraham v. Wright</u>, 430 U.S. 651, 672-73 (1977);

Liberty interests can arise both from the Constitution and from state law. See <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005); <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." <u>Id.</u> It also does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See <u>Hewitt</u>, 459 U.S. at 466-68; <u>see also</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); <u>Resnick v. Hayse</u>, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the Security Housing Unit ("SHU") was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. <u>Sandin v. Conner</u>, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484. When conducting the <u>Sandin</u>

inquiry, courts should look to Eighth Amendment standards as well as the prisoners' conditions of confinement, the duration of the sanction, and whether the sanctions will affect the length of the prisoner's sentence. See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996).

"Typically," as the Ninth Circuit has observed, "administrative segregation in and of itself does not implicate a protected liberty interest" under the Sandin factors. Serrano, 345 F.3d at 1078. Only where the terms of segregation are extreme—for example, indefinite solitary confinement that necessarily entails the loss of parole eligibility—have most courts found that liberty interests might arise. E.g., Wilkinson, 545 U.S. at 224; Brown v. Oregon Dept. of Corrections, 751 F.3d 983, 988 (2014).

Plaintiff had not pled sufficient facts demonstrating that his placement in ad seg constituted an atypical and significant hardship, entitling him to procedural due process. At most, plaintiff was held in ad seg for 23 days. It does not appear, and plaintiff does not allege, that his placement in ad seg extended the length of his sentence. In addition, plaintiff makes no specific claims regarding the conditions of ad seg. While plaintiff alleges that he was deprived of his sleep medication while housed in ad seg, it is not clear that plaintiff was denied his sleep medication because he was in ad seg. Moreover, the undersigned herein finds that plaintiff has not stated a potentially colorable Eighth Amendment claim based on the alleged deprivation of sleep medication. For these reasons, the undersigned does not find that plaintiff's alleged failure to receive his sleep medication in ad seg constituted an atypical and significant hardship. Accordingly, the undersigned finds that plaintiff's claim challenging his placement in ad seg fails to state a potentially colorable due process claim.[2]

Because it does not appear that plaintiff can cure the pleading defects discussed above, the undersigned recommends that defendant Rubacalba be dismissed.

---

[2] Plaintiff may be arguing that defendant Rubacalba denied him due process in connection with his transfer to Corcoran. These allegations do not state a potentially colorable due process claim. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (there is no substantive liberty interest in being housed in a particular prison); Meachum v. Fano, 427 U.S. 215, 224 (1976) (no constitutional right to be housed at a particular prison).

Because plaintiff raised the same claims against defendant Rubacalba in both the original and third amended complaints, he is required to have exhausted his administrative remedies as to defendant Rubacalba before he filed the original complaint on October 3, 2018. See Woodford v. Ngo, 548 U.S. 81, 85-86 (2006) (state prisoners are required to exhaust administrative remedies prior to filing suit in federal court). The exhibits attached to the third amended complaint contain a Third Level Appeal Decision in grievance no. SOL 18-1854 dated January 11, 2019. (ECF No. 18 at 5.) This decision addressed plaintiff's grievance challenging his placement in ad seg. (Id.)

Because the Third Level Decision in grievance no. SOL 18-1854 was issued after plaintiff filed the original complaint, plaintiff likely failed to exhaust his administrative remedies as to his claims against defendant Rubacalba prior to filing this action. However, after reviewing the responses to plaintiff's first and second level grievances for grievance SOL 18-1854, also attached to the third amended complaint, the undersigned cannot definitively determine whether plaintiff received timely responses to these grievances. For this reason, the undersigned does not recommend that the claims against defendant Rubacalba be dismissed for plaintiff's failure to exhaust administrative remedies prior to filing this action.

Defendant Nenshmid

Like the first amended complaint, the third amended complaint contains no allegations against defendant Nenshmid. The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another

to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

Because plaintiff has again failed to link defendant Nenshmid to the alleged deprivations, it does not appear that he can cure this pleading defect. Accordingly, the undersigned recommends that defendant Nenshmid be dismissed.

Defendant Palmer

*Does Plaintiff State a Potentially Colorable Eighth Amendment Claim Against Defendant Palmer?*

Plaintiff alleges that defendant Palmer, a psychiatrist, failed to give him his medication that inflicted unnecessary pain by "keeping me from the needed amount of sleep to live."

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. Id. at 1059.

7

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. Id. at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but also "must also draw the inference." Id.

While a prison official's failure to provide medication prescribed to aid an inmate's sleep may state a potentially colorable Eighth Amendment claim, plaintiff has not pled sufficient facts to state a potentially colorable Eighth Amendment claim. Plaintiff does not describe his medical condition for which the sleeping medication was prescribed. Plaintiff also does not identify the medication. In addition, plaintiff does not discuss the length of time he was deprived of his sleeping medication. For these reasons, the undersigned finds that plaintiff has not stated a potentially colorable Eighth Amendment claim against defendant Palmer. See Bell Atlantic v. Twombly, 550 U.S. 544, 555-57 (2007) (a formulaic recitation of the elements of a cause of action does not suffice to state a claim).

*Failure to Exhaust Administrative Remedies*

Plaintiff did not name defendant Palmer as a defendant in the first amended complaint. For that reason, the undersigned has not previously screened plaintiff's claims against defendant Palmer. Rather than granting plaintiff leave to amend as to his claims against defendant Palmer, the undersigned recommends that the claims against defendant Palmer be dismissed for plaintiff's failure to exhaust administrative remedies. See Jones v. Bock 549 U.S. 199, 214-15 (2007) (exhaustion is an affirmative defense and sua sponte dismissal for failure to exhaust administrative remedies under the PLRA is only appropriate if, taking the prisoner's factual

allegations as true, the complaint establishes his failure to exhaust); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002) (affirming district court's sua sponte dismissal of prisoner's complaint because he failed to exhaust his administrative remedies).

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

As the U.S. Supreme Court recently explained in Ross, 136 S. Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.... [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Id. (internal citations omitted).

The grievance attached to plaintiff's third amended complaint, filed by plaintiff as proof of administrative exhaustion, does not mention defendant Palmer or plaintiff's alleged failure to receive sleep medication. In grievance SOL 18-1854 plaintiff challenges only his placement in ad seg, while housed at Solano, and subsequent transfer. Because grievance SOL 18-1854 does not raise plaintiff's claims against defendant Palmer, the undersigned finds that plaintiff failed to

exhaust administrative remedies as to these claims.  On these grounds, the undersigned recommends that defendant Palmer be dismissed.

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 19, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Wade2844.ame(2)